UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA CIVIL DIVISION

| | |
|---|---|
| DAVID MEAD ) <br> 8204 Moorland Lane ) <br> Bethesda, Maryland, 20817 ) <br> ) <br> Plaintiff, ) <br> Vs. ) <br> ) <br> Sue Ann Mahaffey, et al. ) <br> ) <br> Defendant ) | Case Number 05CV02316 <br><br> (EGS) |

## Notice of Filing

On January 27, 2006, Plaintiff filed a Memorandum in Opposition to Dismiss and did not attach the referenced Exhibits A, B, C, and D.

Attached is the revised Memorandum with Exhibits A, B, C, and D.

Respectfully submitted,

/s/ David Mead

David Mead
8204 Moorland Lane, Bethesda, Md. 20817
P.O. Box 30006 Bethesda, Md. 20824
301/ 656. 2516 (o) 301/656.1593 (f)

RECEIVED
FEB 0 6 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## CERTIFICATE OF SERVICE
## NOTICE OF FILING

I hereby certify that on the February 1, 2006 I mailed a true copy of the Memorandum in Opposition to Motion to Dismiss, with Points and Authorities and proposed Order to:

Sue Ann Mahaffey
Stein, Sperling and Bennett, Etc
25 West Middle Lane
Rockville, Maryland, 20850

Shahram Roudi
First Nationwide Management
and Leasing, Inc.
5125 MacArthur Boulevard, # Suite 41
Washington, D.C. 20016

Chao W. Chen
258 B. Market Street East
Gaithersburg, Maryland 20878

Weichert Realtors, Inc.
225 Littleton Road,
Morris Plains, New Jersey, 07950

Kathleen Sheeran, Agent
Weichert Realtors
6610 Rockledge Drive, Suite 100
Bethesda, Maryland 20814

Nasser Shahparast, Agent,
Royal Investment Group LLC
5301 Goldsboro Road
Bethesda, Md., 20817

Royal Investment Group LLC
a/k/a Foreclosure Real Estate
13799 Park Boulevard N. # 258
Seminole, Florida, 33776

Timothy Crowley, Principal
Remax Realtors
6 Montgomery Village Avenue #200
Gaithersburg, Maryland 20879.

Kathleen Tiong, Agent  Remax Realtors
6 Montgomery Village Avenue, # 200
Gaithersburg, Maryland 20879

Yona Mead
5176 Linnean Terrace, N.W.
Washington, D.C 20008

_____
DAVID MEAD

# AFFIDAVIT OF DENISE MCRAE

The following statement of facts are made of my own free will, with the sole intention to speak the truth and with no pressure or incentive to state the facts otherwise.

I, Denise McRae, being first duly sworn upon oath, depose and state as follows:

1. I am over eighteen years of age, have personal knowledge of the facts contained herein, and am competent to testify.

2. I am a tenant of a property located at 1812-14 North Capitol Street, N.W., Apt. # 3, Washington, D.C. 20002.

3. In mid-September 2002, Mr. Shahram Roudi arrived at our building and announced that he represented the "new owners" of the building. His unexpected visit and his loud and aggressive manner caused fear and apprehension for myself and other residents of the building.

4. From mid-September through mid-November, Mr. Roudi and his associates made several visits to the property, knocking on tenant doors during all times of the day and night, without any prior notice, demanding entry into our apartments to "inspect the premises". He always did this in a very intimidating manner.

5. On one occasion, I told Mr. Roudi that we as tenants intended to exercise our right to purchase the building. He responded: "You have an awful lot to say Ms. McRae". "Maybe if you don't like living here you can leave". He talked as though I was inferior to him. It was insulting and deaming to me.

6. On another occasion in late-September 2002, one of Mr. Roudis' associates stood outside the building and told several of us that the "new owners" intended to pay tenants $3,000-$5,000 apiece to move out so they could rehabilitate the building and re-sell the units as condominiums to middle-income residents ($125,000 - $150,00).

7. On two separate occasions, we heard Mr. Roudi telling his associates to "jack up" the price of their bid proposals. The first time was in late-September, 2002 with a consulting engineer. Mr. Roudi told the engineer to inflate the cost estimate to so he could "cram down" the purchase price for the "new owners". Apparently, the "new owners" made an offer higher than what they were willing to pay.

8. On the second occasion in early October, 2002, we heard Mr. Roudi tell another contractor, Master Builder Inspection, Inc. to inflate the price so that the Trustee selling the building could withdraw money from an escrow account to make improvements to the property prior to settlement. I understand the estimate was for $35,000. By comparison, the lowest bid from Bey's Home Improvements was for $2,800. The work was completed by the second highest bid was $6,000, one-sixth of the inflated price.

9. Whenever we talked to Mr. Roudi of our intention to purchase the building, he invoked his close relationship with the Trustee, Ms. S.A. Mahaffey and said it wouldn't happen. They did this to discourage us and to delay our purchase of the building.

10. Since that time we have duly organized as a tenant association, Affordable Housing Choices, LLC and expect a fully ratified contract from the Trustee, S.A. Mahaffey in the next few days, despite Mr. Roudis' intimidating tactics.

11. We believe Mr. Roudis motive all along was to simply to get his 5% commission, however, both Mr. Roudi and the Trustee, S.A. Mahaffey's attitude and actions always seemed to have racial overtones as well.

12. Since the Trustee S.A. Mahaffey took control of our building in April 2002, maintenance ceased except for government imposed infractions, and conditions have become indecent, unsafe and unsanitary. It is demeaning to live in these conditions.

12. We understand from talking with officials at the Department of Housing and Community Development and Consumer and Regulatory Affairs that several violations of law have occurred by Mr. Roudis' actions, specifically frequent and unannounced visits over a two month period of time beyond any reasonable inspection period.

13. I have re-read the attached documents dated 12/27/02, 4/9/03 and 6/2/03. and they are absolutely truthful representations (see attached).

I DO SOLEMNLY DECLARE AND AFFIRM UNDER THE PENALTIES OF PERJURY THE CONTENTS OF THE FOREGOING DOCUMENT AND ATTACHMENTS ARE CORRECT AND TRUE AND BASED UPON PERSONAL KNOWLEDGE.

*Denise McRae*
Denise McRae, President
Affordable Housing Choices, LLC.

Subscribed and sworn to me this ___ day of August, 2003

_____
Notary Public
My commission expires 03-14-0?

# AFFIDAVIT OF NATTONNIA ROSS

The following statement of facts are made of my own free will, with the sole intention to speak the truth, and with no pressure or incentive to state the facts otherwise.

I, Nattonnia Ross, do hereby state the following:

**SPECIFIC FACTS:**

I am an African-American woman and mother of six children whose ages are 15, 10, 9, 5 and two 3-year-old twins.

I moved into 5004 Brooks St., N.E., Washington, D.C. on June 1, 2001.

The lease term at 5004 Brooks Street, N.E., was in effect through June 2003. I had planned to renew the lease with the longer term objective of buying the house through the District of Columbia housing assistance programs.

On about the middle of November 2002, Mr. Ron Roudi, also known as Shahram Roudi, unexpectedly came to my home. He advised me that he was hired by Ms. Sue Mahaffey, Trustee, to sell the house. I told him to talk to David Mead, the man who owned and rented me the house. He said he didn't have to talk to anyone and that David Mead was no longer the owner.

On about the end of November 2002, Mr. Roudi came to my home again and installed a "For Sale" sign in the front yard. He asked to make my home available to show to potential buyers. I agreed to do that as long as he called my mother to give 24 hours advance notice. He agreed to do that.

A few days later, Mr. Roudi called my mother as agreed and brought a white male by my home the following day. This was the first and only time he gave advance notice. He came **7 other times** after that **without giving any advance notice whatsoever.**

On two separate occasions, he came to my home when my sister Georgia was baby-sitting my children. The first time he came alone and said that he was there " just checking things out". Georgia refused to let him in the house

because I was not at home and she was not expecting him. Mr. Roudi became very angry and had heated words with Georgia as a result.

Around the Christmas/New Year's holidays, Mr. Roudi showed up twice more with a 28-30 year old white female who he described as the "new owners". I was told they had bought the house and were going to do major renovations while my family still lived there. This troubled me a lot. The second time they came by, they said they couldn't do the renovations while we lived there so we'd have to move out before the renovations got started. Mr. Roudi pressured me to find another place to stay during the renovations. I was feeling a lot of anxiety and fear. I had no place for my family to go.

Around the early part of January 2003, Mr. Roudi came by again with "First Right of Refusal" papers. He asked me if I was interested in buying the house. I told him I wanted to buy it but didn't have the money at the time. Then he said I couldn't afford to buy it and asked me to sign the papers so he could turn them into the Section 8 office. I didn't know what to do. I felt a lot of pressure and was upset about the whole matter. Eventually, I signed the papers.

A few days later, Mr. Roudi came by again with another white male. By this time, I was completely frightened and refused to let him in. He started pounding very hard on the front door and was shouting, demanding that I open the door. He was there for about 20 to 30 minutes, walking around the outside of the house, banging on the front and back doors and shouting. He tried to get in from the side and cellar entrances but the doors were locked.

The second time he came when my sister Georgia was baby sitting, she was in the bathroom upstairs when Mr. Roudi arrived with a white male. The children opened the door for them. They walked in and went through the entire house. They went upstairs and walked into the bathroom while Georgia was unclothed and getting out of the bathtub. This was extremely distressing to her. Mr. Roudi and the white male acted undeterred. He said that he had received a down payment and that the house had been sold. He told my sister that we didn't belong there anymore and had to move. He also said the utilities were going to get cut off. Terribly frightened of that prospect, we called and left two or three messages to Ms. Mahaffey but she didn't return the calls.

All this experience left me very frightened for my family. Mr. Roudi deliberately misled us into believing that the house was sold and we had to move out, even though the lease term was effective to June 2003. Under a lot of pressure and afraid for the well-being of my children, I moved out in haste on January 25, 2003, leaving many of my personal belongs behind, including my daughters bed and children's' clothing. Before moving, I told Mr. Roudi I had no money to move. He told me to call Ms. Mahaffey and get some money from her.

Throughout this whole ordeal, both my mother and I left messages with Ms. Mahaffey but she never returned the calls.

A few days after I moved out, I returned to get more of my belongings. I noticed that the back door had been kicked in. Also, the new washer and dryer were no longer in the basement. I called Mr. Roudi around January 27 and asked if he had been to the house. He sounded suspicious and kept asking, "why do you want to know"? When I told him that the washer and dryer were missing, that's when he said he had not been to the house.

One of the main reasons that I leased this house from Mr. Mead was that he promised to assist me in buying the house through government sponsored home-ownership programs. I was very excited about that possibility. Now the house is boarded up and my home ownership opportunity has evaporated. This should never have happened under any circumstance.

All the time that I knew Mr. Roudi, I found him to be a very intimidating person. He is also dishonest. He stated that the house was "sold" when it was not. **He used unscrupulous tactics and threatened my family that caused me to move out *five months before my lease expired*** under extreme circumstances. Apparently, he did this so he could earn a real estate commission that he would have otherwise not earned had I stayed and purchased the house as originally intended. I believe Mr. Roudi should be punished for his unscrupulous actions and for the pain and humiliation that he has caused for my family and me.

*[signature]*
Nattonnia Ross

Subscribed and sworn to me this 11th day of June, 2003

*[signature]*
JESSICA MARIA RODRIGUEZ
Notary Public, State of Maryland
My Commission Expires Aug. 23, 2006

Notary Public

**SO ORDERED**

**Date signed November 09, 2004**



*Paul Mannes*
PAUL MANNES
U. S. BANKRUPTCY JUDGE

### UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### at Greenbelt

IN RE:                              :
                                    :
YONA MEAD                           :   Case No. 02-12644PM
                                    :   Chapter 11
            Debtor                  :
------------------------------------:

### ORDER DENYING MOTION
### FOR AUTHORITY TO SELL REAL PROPERTY

Upon consideration of the Debtor-in-Possession's Motion for Authority to Sell Real Property and the record herein, and it appearing to the court that the proposed sale can only be imposed upon the co-owner by means of an order entered in an adversary proceeding pursuant to 11 U.S.C. § 363(h), it is, by the United States Bankruptcy Court for the District of Maryland,

ORDERED That the Motion is denied without prejudice to the filing of an adversary proceeding that may be processed on an expedited basis.

cc:
Jonathan P. Morgan, Esq., 50 West Edmonston Drive, Suite 600, Rockville, MD 20852
Stephen A. Metz, Esq., Shulman Rogers, 11921 Rockville Pike, Rockville, MD 20852
Yona Mead, 5176 Linnean Terrace, N.W., Washington, DC 20008
David Mead, 8204 Moorland Lane, Bethesda, MD 20817
Brian Barkley, Esq., 51 Monroe Street, Rockville, MD 20850
United States Trustee, 6305 Ivy Lane, #600, Greenbelt MD 20770

**End of Order**

049025

Entered: July 12, 2005
Signed: July 11, 2005
**SO ORDERED**



*Paul Mannes*
PAUL MANNES
U.S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

IN RE:                                      *

   YONA MEAD                          *    Case No. 02-12644
                                               Chapter 11
   Debtor-in-Possession                *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### ORDER DISMISSING CHAPTER 11 CASE
### ON MOTION OF DEBTOR-IN-POSSESSION

The Debtor-in-Possession having moved for dismissal of her Chapter 11 case, and the Court finding that notice was proper, and there being no objections to the relief requested, it is, by the United States Bankruptcy Court for the District of Maryland,

**ORDERED**, that the above-referenced Chapter 11 case is dismissed; and it is further,

**ORDERED**, that the automatic stay imposed by 11 U.S.C. Section 362 is terminated and all creditors and parties in interest are so advised.

cc:  Jonathan P. Morgan                     Office of U.S. Trustee
     50 W. Edmonston Dr., Ste. 600         6305 Ivy Lane, Ste. 600
     Rockville, MD 20852                    Greenbelt, MD 20700

     Yona Mead                              Sue Ann Mahaffey
     P.O. Box 30435                         25 W. Middle Ln.
     Bethesda, MD 20824                     Rockville, MD 20850

### End of Order

043285